# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ADAM HUPE,       ) | |
|            ) | |
|        Plaintiff,    ) | Case No.: 2:16-cv-0533-GMN-VCF |
|     vs.         ) | |
|           ) | **ORDER** |
| PHILIP C. MANI, an individual; RADIANT   ) | |
| POINT LTD, a Texas limited company,    ) | |
|           ) | |
|        Defendants.    ) | |

Pending before the Court is the Motion to Dismiss (ECF No. 8) filed by Defendants Philip C. Mani ("Mani") and Radiant Point, Ltd. ("Radiant") (collectively, "Defendants"). Plaintiff Adam Hupe ("Plaintiff Hupe") filed a Response (ECF No. 12) and Defendants filed a Reply (ECF No. 13).

## I.     BACKGROUND

Plaintiff Hupe filed his Complaint on March 9, 2016, alleging breach of contract and breach of the implied covenant of good faith and fair dealing against Defendants. (Compl. ¶¶ 25–40, ECF No. 1). Plaintiff Hupe's claims center upon allegations that Defendants failed to comply with the payment terms of an agreement to purchase an interest in a slice of a lunar meteorite. (*Id*. ¶¶ 12, 31).

Plaintiff Hupe is a resident of Laughlin, Nevada, and is the co-owner of a large lunar meteorite, named Northwest Africa 5000 ("NWA 5000"), with his brother and business partner, Greg Hupe. (*Id*. ¶¶ 1, 9). Mani is a resident of San Antonio, Texas. (*Id*. ¶ 2). Further, Mani is the general partner of Radiant. (*Id*. ¶ 4). Radiant is a Texas limited corporation authorized to do business in the state of Texas. (*Id*. ¶ 3).

On or about May or June 2013, Mani allegedly expressed an interest in purchasing a slice of NWA 5000 weighing approximately 1,116 grams (the "slice"). (*Id*. ¶ 11).

Subsequently, Mani prepared an agreement for the purchase of Plaintiff Hupe's "50% interest in the 1,116 gram complete slice of the NWA 5000 lunar meteorite" (the "Agreement") (Compl. ¶ 12, ECF No. 1).  Additionally, Mani entered into a similar agreement with Greg Hupe. (*Id*.).  After preparing and signing the Agreement "individually" and as "Manager of Radiant Point GP, LLC," Mani sent the Agreement to Plaintiff Hupe in Nevada for his acceptance. (*Id*. ¶¶ 13–14).

Pursuant to the agreement, the slice of NWA 5000 was sold for $390,000.00, with a total of $195,000.00 for Plaintiff Hupe's interest in the slice due in monthly payments of not less than $5,000. (*Id*. ¶¶ 15–16).  Further, the Agreement states Mani "agreed not to sell, agree to sell, lease, loan, encumber, pledge, otherwise burden, or cut, divide, or otherwise alter the character of the complete slice whatsoever without the prior, written consents of both [Plaintiff] Hupe and Gregory Hupe." (*Id*. ¶ 18).  Thereafter, Mani made twenty-one (21) regular payments of $5,000 for a total of $105,000.00 to Plaintiff Hupe in Nevada. (*Id*. ¶¶ 19–20).  However, Mani failed to make further payments. (*Id*. ¶ 20).  To settle the unpaid $90,000.00, Plaintiff Hupe suggested that the parties work out a possible trade in the form of "other lunar meteorites, gold, silver, coins, or anything with liquidity." (*Id*. ¶ 23).  On or about September 1, 2015, Mani agreed that a trade was "a good idea," but no trade was made and Mani allegedly remains in default under the Agreement. (*Id*. ¶ 24).

In the instant Motion, Defendants argue that this case should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Specifically, Defendants argue Plaintiff Hupe cannot meet his burden to establish minimum contacts necessary to sustain personal jurisdiction over Defendants in Nevada. (Mot. to Dismiss 7:14–16, ECF No. 8).

## II.   **LEGAL STANDARD**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action where a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Although the burden is on the plaintiff to show that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012).

In order for a court to exercise jurisdiction where no applicable federal statute governs personal jurisdiction, personal jurisdiction must exist under the laws of the state where it is asserted. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). Further, the exercise of jurisdiction must satisfy due process. *Id.*  "Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial Dist. Court*, 999 P.2d 1020, 1023 (Nev. 2000).  Therefore, the jurisdiction inquiry is reduced to whether exercising personal jurisdiction over the defendant satisfies due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  Further, "[t]he constitutional touchstone" of the due process inquiry "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Specific jurisdiction, unlike general jurisdiction, allows a court to hear claims that arise out of a defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, D.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  In order to exercise jurisdiction, the nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Further, the defendant must have "minimum contacts" with the forum state itself, rather than mere contacts

with persons who reside there. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Additionally, the plaintiff cannot be the defendant's only connection to the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 1122 (citing *Burger King*, 471 U.S. at 478).

**III.    <u>DISCUSSION</u>**

In the instant Motion, Defendants argue they lack minimum contacts with Nevada, and therefore the Court cannot properly exercise personal jurisdiction in this case.[1]  In response, Plaintiff Hupe argues that Defendants have engaged in actions which they expected to have direct consequences in Nevada.  For the reasons discussed below, the Court finds Plaintiff Hupe has not alleged sufficient facts to warrant the exercise of specific jurisdiction over Defendants in Nevada.

The Ninth Circuit has established a three-prong test for analyzing specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

---

[1] Because Plaintiff Hupe does not assert that the Court could properly assert general jurisdiction over Defendants, the Court will not address whether Defendants may be subject to general jurisdiction in Nevada.

1   *CollegeSource*, 653 F.3d at 1076 (quoting *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d

2   797, 802 (9th Cir. 2004)).  The plaintiff bears the burden of satisfying the first two prongs, and

3   if this burden is met, the burden then shifts to the defendant to "set forth a 'compelling case'

4   that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at

5   476–78).

6        Plaintiff Hupe alleges that Defendants have minimum contacts with Nevada because

7   Mani negotiated the contract for the slice of NWA 5000 which was located in Nevada, sent the

8   Agreement to Plaintiff Hupe in Nevada, requested that Plaintiff Hupe accept the contract in

9   Nevada, and sent twenty-one (21) regular payments of $5,000 for a total of $105,000.00 to

10  Plaintiff Hupe in Nevada. (Resp. 2:3–3:2, ECF No. 12).

11       "The purposeful availment prong of the minimum contacts test for personal jurisdiction

12  requires a qualitative evaluation of the defendant's contact with the forum state, in order to

13  determine whether [the defendant's] conduct and connection with the forum state are such that

14  [the defendant] should reasonably anticipate being haled into court there." *Harris Rutsky & Co.*

15  *Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1130 (9th Cir. 2003).  Standing alone,

16  the mere act of contracting with a party who is a resident of a forum state does not establish

17  sufficient contact to warrant a court's exercise of jurisdiction. *Burger King*, 471 U.S. at 478.

18  The court's exercise of jurisdiction must be linked to the defendant's relationship with the

19  forum state itself. *Walden*, 134 S. Ct. at 1123.  Although a defendant's connection with the

20  forum state will often be related to his connection with residents thereof, relationships with

21  residents of the forum state, without more, is not sufficient. *Id*.

22       Ordinarily "use of the mails, telephone, or other international communications simply do

23  not qualify as purposeful activity invoking the benefits and protection of the [forum] state."

24  *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (quoting *Thos. P. Gonzalez Corp. v.*

25  *Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1252 (9th Cir. 1980)).  The

agreement and practice of mailing or making payment in the forum state does not weigh heavily "in the calculus of contacts." *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985) (citing *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1984)); *Hydrokinetics, Inc. v. Alaska Mech. Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), *cert. denied,* 466 U.S. 962 (1984); *Olivine Int'l Mktg., LTD v. Texas Packaging Co.*, No. 2:09-CV-2118-KJD, 2010 WL 4024232, at *4 (D. Nev. Sept. 27, 2010).

Here, the contract at issue merely involved the single slice of NWA 5000 and the subsequent recurring payments.  As held in *Burger King*, "the mere act of contracting with a party who is a resident of a forum state does not establish sufficient contact to warrant a court's exercise of jurisdiction." 471 U.S. at 478.  Notably, the contract in *Burger King* contemplated "a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida." *Id.*  Although the regular payments of $5,000 created a recurring obligation to Plaintiff Hupe, the duration and scope of this single contract with a Nevada resident are far from the twenty-year relationship and wide-reaching contacts in Florida described in *Burger King*. *Id.*  Thus, the fact that Plaintiff Hupe is a Nevada resident and that regular payments for the slice of NWA 5000 were sent to him in Nevada is insufficient to invoke the benefits and protections of Nevada for the purposes of personal jurisdiction.

In addition to the actual contract and regular payments, Plaintiff Hupe also alleges that Nevada has personal jurisdiction over Defendants because Mani initiated communication, drafted the Agreement, and negotiated with Plaintiff Hupe to buy the meteorite while Plaintiff Hupe was a resident of Nevada. (Compl. ¶¶ 11–12).  Although all parties agree Mani drafted the Agreement, Defendants dispute that Mani initiated communication and negotiated with Plaintiff Hupe to buy NWA 5000.

Negotiations and future consequences of an agreement must be considered in a court's personal jurisdiction analysis. *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991).  The

Ninth Circuit in *Roth* made it clear that "the purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant himself,' or conversely to the unilateral activity of another party." *Roth*, 942 F.2d at 621 (quoting *Burger King*, 471 U.S. at 475). Accordingly, in *Roth* "over 100 calls and numerous faxes," "travel efforts" to secure movie rights, and the fact that the majority of the work negotiated in the contract would be completed in California were enough to establish personal jurisdiction over the Defendant. *Id.* at 629.

The Court notes that Plaintiff bears the burden to produce "admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1107 (C.D. Cal. 1999) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203–04 (5th Cir. 1989)); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) ("It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant."); *Nw. Healthcare All. Inc. v. Healthgrades.Com, Inc.*, 50 F. App'x 339, 340 (9th Cir. 2002) ("When an exercise of personal jurisdiction is challenged, the burden is on plaintiff to demonstrate why the exercise of jurisdiction is proper."). Further, "the Court may consider evidence presented in affidavits and declarations determining personal jurisdiction." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Additionally, the court resolves all disputed facts in favor of the plaintiff." *Washington Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012).

Similar to *In re Cathode*, Mani produced a declaration setting forth detailed facts which contradict the jurisdictional allegations stated in Plaintiff Hupe's Complaint. 27 F. Supp. 3d at 1008. However, Plaintiff Hupe has not produced any affirmative evidence to rebut the declaration. Therefore, this Court can accept the uncontroverted factual statements of the declaration as true. *See id.*

Based on the allegations in the Complaint and the declaration attached to the Motion to Dismiss, Mani contacted and sent Plaintiff Hupe the Agreement only after Greg Hupe initiated contact and negotiated with Mani to sell the slice of NWA 5000. (*Id.*).  Unlike the "100 calls" and "travel efforts" in *Roth*, Mani simply sent the Agreement to Plaintiff Hupe in Nevada and requested that Plaintiff Hupe accept the contract. 942 F.2d at 621.  These communications do not indicate that Defendants received any benefit from Nevada's laws, and instead speak only to Defendants' relationship with Plaintiff Hupe.

Finally, the parties do not indicate that the Agreement provided a choice of law or specified a particular forum for disputes arising under its terms.  The fact that the Agreement made no mention of Nevada implies that Defendants contracted with a Nevada resident merely because it was where Plaintiff Hupe resided.  This weighs against the notion that Defendants may have sought to benefit from Nevada's laws. *See CC Mexicano. US, LLC v. Aero II Aviation, Inc., et al.*, 2014 WL 3783937, at *3 (D. Nev. 2014) (finding that a forum selection clause served as evidence of the defendant's purposefully availing itself of benefits and protections of Nevada law).

For the reasons discussed above, the fact that Defendants executed a contract with a Nevada resident to whom they subsequently issued payments does not establish purposeful availment of Nevada's laws.  Therefore, the Court finds it lacks personal jurisdiction over Defendants in this case.[2]

///

///

///

///

---

[2]  Because Plaintiff Hupe has not sufficiently alleged that Defendants purposefully availed themselves of Nevada's benefits and protections, the Court need not analyze the other elements of specific jurisdiction in this case.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly and close the case.


**DATED** this ___12__ day of July, 2016.


_____
Gloria M. Navarro, Chief Judge
United States District Court